**Tell v. Pittsburgh Radiator Supply Company**

*Katherin H. Fein,* for plaintiffs.
*James A. Prozzi,* for defendant.

STAISEY, *J.,* March 16, 1981—Appellant, Pittsburgh Auto Radiator Supply Company, appeals to this court pursuant to section 933(a)(2) of the Judicial Code, 42 Pa.C.S.A. §933(a)(2), and subchapter B of Chapter 7 of Title 2 relating to judicial review of local agency action, known as the Local Agency Law, 2 Pa.C.S.A. §751 et seq., from the order of the Commission on Human Relations of the City of Pittsburgh dated April 9, 1980, finding that Pittsburgh Auto Radiator Supply Company had paid appellee's Cynthia M. Tell, Karen L. Walter and Louise Sparano, female employes of appellant, less compensation than similarly situated male employes and ordering appellant to pay the complainants back pay based upon the salary differential for the relevant times in question. We reverse in part and affirm in part.

Initially, it must be noted at the outset that the scope of this court's review in such matters is a statutorily defined and narrow one. Section 754(b) of the Local Agency Law, 2 Pa.C.S.A. §754(b), provides as follows:

"§754 Disposition of appeal—"
"(b) Complete Record.—In the event a full and

complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." See also, Gabriel v. Trinity Area School District, 22 Pa. Commonwealth Ct. 620, 350 A. 2d 203 (1976).

Having conducted an independent and exhaustive review of the administrative record before us, including the transcript of testimony of the June 25, 1979, and July 13, 1979, hearings before the commission, we are of the opinion that the commission's findings of fact as to the claim of Sparano only are not supported by substantial evidence and that its adjudication as to Sparano's claim is not in accordance with the applicable law.

This is a case of alleged sexual discrimination in compensation brought against Pittsburgh Auto Radiator Supply Company by complainants Tell, Walter and Sparano, charging appellant with violation of section 8(a) of City Ordinance No. 75 of 1967, which reads:

"It shall be an unlawful employment practice . . . (a) For any employer to hire any person or otherwise to discriminate against any person with respect to hiring, tenure, compensation, promotion, discharge or any other terms, conditions or privileges directly or indirectly related to employment because of race, color, religion, ancestry, sex, na-

tional origin or place of birth." (Emphasis supplied.)

City Ordinance no. 75 was adopted by the City of Pittsburgh in 1967 pursuant to the authority granted to it by section 12.1(a) of the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §962.1(a). Subsection (d) of section 12.1 of the act, 43 P.S. §962.1(d), provides that in creating a local human relations commission, the legislative body of the political subdivision may grant to the local commission "powers and duties similar to those now exercised by the Pennsylvania Human Relations Commission under the provisions of this act." Thus, as noted by the Commonwealth Court in the City of Pittsburgh Commission on Human Relations v. MacBeth, 37 Pa. Commonwealth Ct. 636, 391 A. 2d 1109, 1110 (1978), "it is clear from this language of the Act that the General Assembly, while desirous of extending to municipalities the right to establish local commissions, did not intend to extend to local commissions powers or duties above and beyond those possessed by the Pennsylvania Human Relations Commission (PHRC)." Consequently, we are of the belief that in determining what might constitute a violation of section 8(a) of the City Ordinance we must look to the corresponding provisions of the state act for guidance.

The guidelines of the Pennsylvania Human Relations Commission provide that it is a violation of the state act to differentiate in pay between men and women performing "the same or substantially similar jobs." The State Commission then states that it will adopt the Federal government's standards under the Fair Labor Standards Act of June 25, 1938, 52 Stat. 1060, 29 U.S.C.A §201 et seq., as amended by the Equal Pay Act of June 25, 1938, 52

Stat. 1062, 29 U.S.C.A. §206, in determining "equal pay for equal work" questions. See Guidelines at section 2(B)(1).

Based upon the above rationale, it is clear that this Commission may consider the "equal pay for equal work" question under the City Ordinance, but that it must be guided by the applicable Federal interpretations of the standard. This is precisely what was stated by this court in a recent decision of Judge Narick which involved a similar question under the City Ordinance. There, in Carey v. Industrial Health Foundation, No. SA 884 of 1978 (December 17, 1979), Judge Narick stated that "(a)lthough the action was brought under Ordinance no. 75, the objectives and coverage were encompassed by the Equal Pay Act and the standards established under it." This court also noted that the Commission was "in fact bound by recent Supreme Court decisions" interpreting the Equal Pay Act.

In that opinion, Judge Narick aptly stated the controlling law for determining a violation of section 8(a) of City Ordinance no. 75 as follows:

"The applicable standard was set forth in Schultz v. Wheaton Glass Co., 421 F. 2d 259 (3rd Circuit 1970) where the Court held that Congress, in prescribing equal pay for 'equal work,' did not require that the jobs be identical, but only that they must be substantially equal. See Angelo v. Bacharach Instrument Co., 555 F. 2d 1164 (1977).

"In order to show a prima facie case, the Plaintiff must show the jobs involved equal work on jobs the performance of which required equal skill, effort and responsibility and similar working conditions. Brennan v. Corning Glass Works, 417 U.S. 188 (1974); Wetzel v. Liberty Mutual Ins. Co., 449 F. Supp. 397 (1978)."

Applying the above standard to the controversy before us we are unable to find substantial evidence in the record to support the Commission's factual findings that the job performed by Louise Sparano was "substantially equal" to the job performed by her alleged male counterpart. The relevant and uncontradicted evidence in the record before us establishes that appellant, Pittsburgh Auto Radiator Supply Company (company) is engaged in the manufacture of auto and truck radiators. During the time material to this appeal, there were two basic production departments at the company: "TUC" and Straight Fin." The TUC Department was primarily concerned with preparing an inventory of radiators pursuant to a catalog in a standarized manner. The Straight Fin Department, on the other hand, prepared radiators in almost all cases on a made-to-order basis, and these mainly consisted of very large truck and mine equipment radiators, which are considerably more expensive than the catalog items produced in the TUC Department. All three complainants were employed in the TUC Department, and the factual basis for each claim will be separately set forth herein.

Initially, the court directs its attention to the claim of Louise Sparano that she was paid less wages than one Bernie McDade for work which Sparano claims was substantially equal to that performed by McDade. In its findings of fact the commission, in sustaining Sparano's discrimination found as follows:

9. Although Sparano and McDade operated different machines while working on the production line, and therefore did not perform identical tasks, the differences in their actual job performance were incidental and not substantial.

Having conducted an independent review of the

record, we find the same to be completely devoid of any evidence which tends to support the commission's mere conclusionary statement that the differences in the jobs performed by Sparano and McDade "were incidental and not substantial." To the contrary, the evidence leads the court to the inescapable conclusion that the differences in the degree of skill, effort and responsibility required in the performance of the two jobs were both material and substantial.

Not only did Sparano and McDade operate different machines as noted by the commission but in fact they worked in completely different departments. Sparano worked in the TUC department which as indicated above was engaged in the manufacture and assembly of standard size radiators. McDade, on the other hand, worked in the Straight Fin department which repaired radiators on the basis of special orders. Among the more glaring distinctions in job duties and skills between the two employes are the following: Sparano operated a machine known as a TUC stacker which automatically dispenses a pre-determined number of pre-cut tubes used in the assembly of the radiator core. McDade, on the other hand was engaged in the production of special order radiators in what is referred to as a "nest." As part of his duties, McDade was often required to read and work with blueprints in order to ascertain the specific size and measurement of tubing required for the particular radiator to be assembled. Since McDade was involved in the production of radiators on a special order basis, the different specifications of each particular job required McDade to either cut or supervise the cutting of the tubes to specified lengths as opposed to Sparano who worked with pre-cut tubing.

Moreover, once McDade determined the required

length of the tubes, he had to manually push the tubes through slots in the fins. This is a task which required considerable physical effort. It differed entirely from the process involved in the TUC Stacker operated by Sparano, where the tubes were automatically fed into the fins. Thus, the evidence overwhelmingly indicates that the degree of skill and physical labor required of McDade in the production of special order radiators differs materially from that required of Sparano in the manufacture of fungible standard inventory radiators.

With regard to the claims of Karen Walter and Cynthia Tell, we are, however, of the opinion that the commission's finding that the jobs which they performed were "virtually identical" to that of a male named Duane Flemister, are supported by substantial evidence and an appropriate order shall be entered affirming the commission's adjudication as to Walter and Tell.

## ORDER

And now, March 16, 1981, for reasons set forth in the within opinion, it is hereby ordered that the appeal of Pittsburgh Radiator Supply Company is hereby sustained as to the claim of Louise Sparano and that the order of the Commission on Human Relations of the City of Pittsburgh, dated April 9, 1980, as it concerns Louise Sparano, is hereby reversed. It is further ordered that the appeal of Pittsburgh Auto Radiator Supply Company as to the claims of Cynthia M. Tell and Karen L. Walter is hereby denied and that the order of the Commission of Human Relations of the City of Pittsburgh, dated April 9, 1980, as it concerns Cynthia M. Tell and Karen L. Walter is hereby affirmed.